

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-25-00346-CV

---

## IN THE INTEREST OF J.W.H. AND T.L.H., CHILDREN

---

On Appeal from the 31st District Court
Wheeler County, Texas
Trial Court No. 14617, Honorable Steven R. Emmert, Presiding

---

July 22, 2026

## MEMORANDUM OPINION

Before PARKER, C.J., and DOSS and YARBROUGH, JJ.

In this suit affecting the parent-child relationship ("SAPCR"), appellant Maegan Bridgman Hunt appeals the trial court's order granting possession of and access to her children, J.W.H. and T.L.H., to their paternal grandparents, Amy and Freddy Hunt.[1]  In two issues, Mother asserts the trial court erred in concluding that Grandparents had standing to bring the suit and in determining that the evidence was sufficient to overcome the fit-parent presumption.  We reverse the trial court's order and render judgment dismissing Grandparents' suit for lack of standing.

---

[1] We refer to Maegan Hunt as "Mother" and to Amy and Freddy Hunt as "Grandparents."

## BACKGROUND

Mother was married to Dustin Lee Hunt, the son of Grandparents. The couple lived in Wheeler County, near Grandparents. Dustin and Mother's first son, J.W.H., was born in 2014. Dustin died in September of 2020, when Mother was pregnant with their second son, T.L.H. T.L.H. was born in January of 2021.

After Dustin's death, Grandparents assisted Mother with childcare for J.W.H. and T.L.H. while Mother worked at a café she owned and operated. Mother eventually closed the café to focus on the needs of J.W.H., who began acting out in the years following Dustin's death. In March of 2024, J.W.H. had an emotional and angry outburst directed at Mother. J.W.H. stated that Grandmother told J.W.H. that Mother was on methamphetamine and was going to die or go to jail. J.W.H. expressed to Mother that he hated her and did not want to be alive. Mother took J.W.H. to Grandparents' house to discuss J.W.H.'s statements.

Following this confrontation, on April 29, 2024, Grandparents filed their *Original Petition in Suit Affecting the Parent-Child Relationship* seeking to be named managing conservators with the right to designate the primary residence of the children. The petition alleged that Grandparents had standing to bring the suit under sections 102.003(a)(9), 102.003(a)(13), and 102.004(a)(1) of the Texas Family Code. Grandparents alternatively sought an order granting them access to or possession of the children, alleging that denial of such access or possession would significantly impair the children's physical health or emotional well-being.

2

The trial court held a temporary orders hearing in September of 2024 and a final hearing in September of 2025. At the time of the final hearing, Mother and the children resided in Idaho with Mother's fiancé. The trial court named Mother sole managing conservator and Grandparents possessory conservators, allowing them to have possession of and access to the children and electronic communication with the children. Mother was ordered to share in the costs of travel for the children's visits to Grandparents. Mother timely filed this appeal.

**ANALYSIS**

Grandparents' Standing

By her first issue, Mother argues that the trial court abused its discretion when it determined that Grandparents have standing to bring this lawsuit. Standing is a component of subject-matter jurisdiction and is a threshold issue in a child custody proceeding. *In re A.D.T.*, 588 S.W.3d 312, 316 (Tex. App.—Amarillo 2019, no pet.). Whether a party has standing to pursue a cause of action is a question we review de novo. *Id.* A party seeking relief in a SAPCR must allege and establish standing within the parameters of the language used in the relevant provisions of the Family Code. *In re H.L.*, 613 S.W.3d 722, 724 (Tex. App.—Fort Worth 2020, no pet.).

Our analysis of whether a party has standing begins with the petitioner's live pleadings, which we construe in the petitioner's favor. *See Jasek v. Tex. Dep't of Fam. & Protective Servs.*, 348 S.W.3d 523, 527, 531 (Tex. App.—Austin 2011, no pet.). However, we must also consider evidence the parties presented below that is relevant to

3

the jurisdictional issues, including any evidence that a party has presented to negate the existence of facts alleged in the petitioner's pleadings.  *Id.* at 528.

In their original petition, Grandparents alleged that they have standing to sue under subsections 102.003(a)(9), 102.003(a)(13), and 102.004(a)(1) of the Texas Family Code. In its *Findings of Fact and Conclusions of Law*, the trial court stated that Grandparents "have standing under Texas Family Code 102.003 and 102.004 to file this original suit for managing conservatorship because the order requested is necessary because the children's present circumstances would significantly impair the children's physical health or emotional development."  Because of its use of language from section 102.004(a)(1), we construe this statement as a determination that Grandparents have standing under that specific subsection.[2]

Section 102.004(a)(1) allows grandparents and certain other close relatives to file an original suit requesting managing conservatorship upon "satisfactory proof" that "the child's present circumstances would significantly impair the child's physical health or emotional development . . . ."  TEX. FAM. CODE § 102.004(a)(1).  Generally, "standing is based on the existence of certain facts, not the existence of certain proof."  *In re K.D.H.*, 426 S.W.3d 879, 884 (Tex. App.—Houston [14th Dist.] 2014, no pet.).  But the standard is different in cases such as this one, where the question of standing "impact[s] a parent's right to decide how to best care for her child free from interference by nonparents . . . ."  *Bridges v. Pugh*, No. 01-22-00027-CV, 2023 Tex. App. LEXIS 3159, at *7 (Tex. App.—

---

[2] Grandparents concede that nothing else in the record indicates that the trial court found that they had standing under section 102.003 and that the reference to this provision was likely an error.  Our review confirms that the record does not support a determination that Grandparents had standing under either subsection 102.003(a)(9) or subsection 102.003(a)(13), the subsections pleaded by Grandparents.

Houston [1st Dist.] May 11, 2023, no pet.) (mem. op.).  Under subsection 102.004(a)(1), the Texas Legislature has conferred standing based on the existence of proof rather than the pleading of facts.  *Id.* at *8.  "Satisfactory proof" for purposes of establishing standing under subsection 102.004(a)(1) means "proof established by a preponderance of the evidence as the facts existed at the time the suit or intervention was filed."  *Compton v. Pfannenstiel*, 428 S.W.3d 881, 885 (Tex. App.—Houston [1st Dist.] 2014, no pet.).  Grandparents had to show by a preponderance of the evidence that specific, identifiable behavior by Mother would probably cause significant impairment to the physical health or emotional development of the children.  *See In re L.D.F.*, 445 S.W.3d 823, 830 (Tex. App.—El Paso 2014, no pet.).  "'[P]hysical abuse, severe neglect, abandonment, drug or alcohol abuse, or immoral behavior on the part of the parent' are all factors the trial court may consider in assessing significant impairment."  *Id*.

The trial court made two findings, encompassing four specific behaviors, in support of its conclusion that Grandparents have standing, namely:

> 11. The Court finds pursuant to Family Code Section 102.004, that [Mother] is not a fit parent based upon her marijuana usage and leaving the children unattended.

> 12. Additionally, the Court finds that [Mother] has compromised the educational development of the children and has cohabited unmarried to the detriment of the children.

We first consider Finding No. 12, then Finding No. 11.

*Educational development of the children*

The trial court found that Mother had "compromised the educational development of the children . . . ." At the time suit was filed in April of 2024, J.W.H. was in fourth grade.[3] The trial court heard evidence that J.W.H. has dyslexia and that he did not meet grade-level standards for math and reading in third and fourth grade. Although the record contains additional information regarding the children's educational progress after suit was filed, such as moving, changing schools, and being homeschooled, those facts are not germane to our analysis. Standing and subject matter jurisdiction are determined at the time suit is filed. *See In re C.M.J.*, No. 02-12-00036-CV, 2012 Tex. App. LEXIS 10601, at *5–6 (Tex. App.—Fort Worth Dec. 21, 2012, no pet.) (mem. op.) (holding that grandparents who did not have actual possession of grandchild for six months at time lawsuit was filed could not later acquire standing by amending pleading once six-month requirement was satisfied). We consider the circumstances at the time Grandparents filed suit, which is the relevant snapshot in time for determining standing. *See* TEX. FAM. CODE § 102.004(a)(1).

The record does not indicate that, at the time Grandparents filed suit, Mother had taken or failed to take any specific action that harmed J.W.H.'s educational development. Moreover, the record does not demonstrate that J.W.H.'s physical health or emotional development were significantly impaired because of his challenges at school. Therefore,

---

[3] T.L.H. was three years old when suit was filed and there is no evidence regarding his education at that time.

we conclude that this finding does not support a determination that Grandparents have standing.

*Cohabitation*

By the time of the final hearing, Mother was engaged and she and the children lived with her fiancé in Idaho. However, at the time Grandparents filed suit, Mother was not cohabitating with her fiancé and there is no evidence that she "cohabitated unmarried to the detriment of the children" with any other person. We do not view Mother's living arrangements in the months after suit was filed to be part of the children's "present circumstances" that we consider in determining whether Grandparents had standing at the time they filed the lawsuit. *See In re C.M.J.*, 2012 Tex. App. LEXIS 10601, at *5–6; *Zaan, LLC v. Sangani*, No. 05-12-00423-CV, 2015 Tex. App. LEXIS 5133, at *12–13 (Tex. App.—Dallas May 20, 2015, pet. denied) (mem. op.) (parties' subsequent acquisition of an interest sufficient to support standing will not retroactively vest trial court with jurisdiction). Consequently, this finding does not support the conclusion that Grandparents have standing.

*Leaving children unattended*

The trial court heard testimony that Mother had left T.L.H. sleeping in his crib at home while she opened her café in the morning. This occurred on a few occasions when T.L.H. was two years old. Mother testified that the café was "45 seconds away" from her house and that she watched T.L.H. via a baby monitor. In connection with this conduct, the Texas Department of Family and Protective Services investigated Mother for alleged neglectful supervision. The investigator noted that the behavior had occurred in the past

7

and she had no reason to believe Mother did it again. The Department ruled out the allegation of neglectful supervision. At the time the suit was filed, T.L.H. was three years old and Mother was no longer operating the café.

Evidence that Mother had left T.L.H. unattended in the past did not involve "present circumstances" that would significantly impair T.L.H.'s physical health or emotional development and thus does not confer standing under section 102.004(a)(1). *See Rolle v. Hardy*, 527 S.W.3d 405, 420 (Tex. App.—Houston [1st Dist.] 2017, no pet.) (non-parent cannot meet standing burden with evidence showing that she would be better custodian of child, has strong and ongoing relationship with child, or that parent would not have been proper custodian in past).

*Marijuana use*

The trial court found that Mother is "not a fit parent based upon her marijuana usage . . . ." In her testimony, Mother acknowledged that she had used marijuana once or twice a week. She stated it was "that THC vape stuff" that she bought at a "vape store" and that she used it at the café, not when she was at home with her children. Mother testified that she did not use marijuana in front of the kids and that it did not affect her parenting. She stated that she had used marijuana again after the temporary orders hearing in September of 2024. The Department investigator who investigated Mother for alleged neglectful supervision testified that Mother agreed to take a drug test and that she passed. J.W.H.'s counselor testified that she did not see any negative effects in J.W.H. that were related to Mother's past use of marijuana. On the other hand, Grandmother testified that she saw messages on a phone indicating that Mother had people bring her

8

marijuana, that she had sold marijuana to a friend, and that Mother said she "almost went to jail." Grandmother stated that J.W.H. was "frightened and scared for his mother's well-being and what would happen to them if she got caught with the drug use . . ." Although Grandmother testified that she was concerned about the children because of Mother's marijuana use, she admitted that she did not contact the Department or law enforcement. She also testified that she believed Mother was "a good mom" and "a fit parent." Grandmother agreed that if Mother would allow her access to the children, Mother's drug use would not be "a big issue," and stated, "If I could see my grandkids, none of us would be here."

In our view, the evidence of Mother's marijuana use does not rise to a level demonstrating that the present circumstances of the children would significantly impair their physical health or emotional development. *See* TEX. FAM. CODE § 102.004(a)(1). For example, the record does not indicate that Mother's marijuana use created a dangerous or unstable home life or rendered her incapable of properly caring for her children. *See, e.g., In re C.R.T.*, 61 S.W.3d 62, 67–68 (Tex. App.—Amarillo 2001, pet. denied) (evidence justified appointment of third-party as managing conservator instead of parent where parent had drug addiction, abandoned children, failed to support children, and depended on parents for her well-being); *see also In re S.T.*, 508 S.W.3d 482, 497–98 (Tex. App.—Fort Worth 2015, no pet.) (evidence of past criminal conduct and drug use insufficient to show significant impairment because at time of trial, father had appropriate housing and income, had completed parenting classes, and no witness testified that father lacked parenting skills); *Critz v. Critz*, 297 S.W.3d 464, 477 (Tex. App.—Fort Worth 2009, no pet.) (despite parent's history of drug abuse, "there was no

9

evidence presented of any current drug use that would cause significant impairment to [child's] physical health or emotional development in the present").

The link between a parent's conduct and harm to a child "may not be based on evidence that raises mere surmise or speculation of possible harm." *In re K.R.B.*, No. 02-10-00021-CV, 2010 Tex. App. LEXIS 8161, at *12 (Tex. App.—Fort Worth Oct. 7, 2010, no pet.) (mem. op.); *see also* TEX. FAM. CODE § 262.116(a)(8) (specifying that Department may not remove child from parent's possession if parent "tested positive for marihuana, unless the [D]epartment has evidence that the parent's use of marihuana has caused significant impairment to the child's physical or mental health or emotional development . . . ."). Here, the evidence indicated that Mother was a suitable parent and that her use of marijuana did not cause significant impairment to J.W.H. and T.L.H.

We conclude that the factors relied upon by the trial court do not meet Grandparents' burden to show that specific conduct by Mother would probably cause significant impairment to the children's physical health or emotional development. *See In re L.D.F.*, 445 S.W.3d at 830. Therefore, Grandparents failed to establish their standing to seek modification of conservatorship of J.W.H. and T.L.H. under section 102.004(a)(1) and the trial court lacked jurisdiction to act on their petition. Because we conclude that Grandparents do not have standing, we dismiss the suit. *See La Tierra de Simmons Familia, Ltd. v. Main Event Entm't, LP*, 03-10-00503-CV, 2012 Tex. App. LEXIS 1928, at *4 (Tex. App.—Austin Mar. 9, 2012, pet. denied) (mem. op.) ("Standing must exist at the time a plaintiff files suit and must continue to exist between the parties at every stage of the legal proceedings, including the appeal; if the plaintiff lacks standing at the time suit is filed, the case must be dismissed, even if the plaintiff later acquires an interest sufficient

to support standing.").  Further, we need not address the second issue raised by Mother.

TEX. R. APP. P. 47.1.

**CONCLUSION**

For the foregoing reasons, we reverse the judgment of the trial court and dismiss this cause.


Judy C. Parker
Chief Justice